UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
SOUTHERN DIVISION
LONDON

| | | |
|---|---|---|
| CHRISTI GOSSER, | ) | |
| | ) | |
| Plaintiff, | ) | No. 6:24-CV-19-HAI |
| | ) | |
| v. | ) | |
| | ) | MEMORANDUM OPINION |
| MARTIN O'MALLEY, *Commissioner of* | ) | & ORDER |
| *Social Security*, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

*** *** *** ***

In May 2021, Christi R. Gosser filed for for disability benefits, disabled widow's benefits, and supplemental security income.  *See* D.E. 12 at 17.[1]  She alleged disability beginning September 2005 but that was later amended to December 1, 2020.  The Social Security Administration denied her claims initially and upon reconsideration.  Then, on March 9, 2023, Administrative Law Judge ("ALJ") Joyce Francis conducted a telephonic administrative hearing.  This hearing was confined to the issues of supplemental security income under Title XVI and disabled widow's benefits under Title II.  The ALJ heard testimony from Gosser (represented by attorney Elizabeth K. Boyles) and an impartial vocational expert ("VE").  *Id*.  Gosser was found to not be disabled during the relevant period, December 1, 2020, to June 2, 2023, the date of the decision.  *Id*. at 37.  This meant she did not qualify for supplemental security income or disabled widow's benefits.  *Id*.

Gosser brought this action under 42 U.S.C. §§ 405(g) and 1383(c) on February 9, 2024, to obtain judicial review.  D.E. 1.  The parties consented to the referral of this matter to a

---

[1] References to the administrative record are to the blue numbers generated by ECF.

magistrate judge. D.E. 9. Accordingly, this matter was referred to the undersigned to conduct all proceedings and order the entry of a final judgment in accordance with 28 U.S.C. § 636(c) and Federal Rule of Civil Procedure 73. After the record was filed (D.E. 12), the parties submitted briefs (D.E. 14, 18). The Court, having reviewed the record and for the reasons stated herein, **DENIES** Gosser's request for relief.

## I. The ALJ's Decision

Under 20 C.F.R. §§ 404.1520, 416.920, an ALJ conducts a five-step analysis to evaluate a disability claim. The ALJ followed these procedures in this case. *See* D.E. 12 at 17-37.

At the first step, if a claimant is working at a substantial gainful activity, she is not disabled. 20 C.F.R. § 404.1520(b). In this case, the ALJ found that Gosser "has not engaged in substantial gainful activity since December 1, 2020, the amended alleged onset date." D.E. 12 at 20.

At the second step, if a claimant does not have any impairment or combination of impairments which significantly limit her physical or mental ability to do basic work activities, then she does not have a severe impairment and is not disabled. 20 C.F.R. § 404.1520(c). The ALJ found that Gosser has the following severe impairments: "anxiety, depression, panic disorder, migraines, bilateral carpal tunnel syndrome, and obesity (20 CFR 404.1520(c) and 416.920(c))." D.E. 12 at 21. Gosser does not argue the ALJ should have identified additional severe impairments.

At the third step, if a claimant's impairments meet or equal an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1, then she is disabled. 20 C.F.R. § 404.1520(d). The ALJ found Gosser failed to meet this standard. D.E. 12 at 22-24. The ALJ considered several listings but found none of them satisfied in Gosser's case. *Id.*

Gosser argues the ALJ erred at this step and should have found that her migraine headache disorder medically equaled Listing 11.02B under the governing regulations. D.E. 14 at 5-11.

If, as here, a claimant is found non-disabled at step three, the ALJ must determine the claimant's Residual Functional Capacity ("RFC"), which is her ability to do physical and mental work activities on a sustained basis despite limitations from the impairments. The ALJ found Gosser had the RFC "to perform medium work as defined in 20 CFR 404.1567(c) and 416.967(c), except she can frequently be exposed to noise and vibration, can frequently handle, finger, and feel bilaterally, can sustain attention and concentration to complete simple tasks with regular breaks every two hours during an eight-hour workday. She can interact occasionally with the public. She can adapt to work to routine work conditions and occasional workplace changes that are gradually introduced." D.E. 12 at 24.

Gosser objects the ALJ's RFC finding. She argues the ALJ failed to properly evaluate a number of medical opinions, which, if accepted, would have led to a finding that Gosser was unable to perform substantial gainful employment. D.E. 14 at 12-22.

At the fourth step, if a claimant's impairments do not prevent her from doing past relevant work (given the ALJ's assessment of her residual functional capacity), she is not disabled. 20 C.F.R. § 404.1520(f). The ALJ found that Gosser "has no past relevant work." D.E. 12 at 36. Up through the fourth step, the burden of proof is on the claimant. *Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 474 (6th Cir. 2003).

At the fifth step, if a claimant's impairments (considering her RFC, age, education, and past work) do not prevent her from doing other work that exists in the national economy, she is not disabled. 20 C.F.R. § 404.1520(g). The ALJ found "there are jobs that exist in significant

numbers in the national economy that the claimant can perform (20 CFR 404.1569, 404.1569a, 416.969, and 416.969a)."  D.E. 12 at 36.  These jobs include linen room attendant, laundry worker, and marker.  *Id*. at 36-37.

Accordingly, on September June 6, 20203, the ALJ issued an unfavorable decision, finding that Gosser was not disabled.  D.E. 12 at 37.  The Appeals Council declined to review the ALJ's decision on November 27, 2023.  *Id*. at 7.

## II.  Framework for Judicial Review

Under the Social Security Act, a "disability" is defined as "the inability to engage in 'substantial gainful activity' because of a medically determinable physical or mental impairment of at least one year's expected duration."  *Cruse v. Comm'r of Soc. Sec.*, 502 F.3d 532, 539 (6th Cir. 2007).  Judicial review of the denial of a claim for Social Security benefits is limited to determining whether the ALJ's findings are supported by substantial evidence and whether the correct legal standards were applied.  *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007).  "Substantial evidence" is "more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  *Cutlip v. Sec'y of Health & Human Servs.*, 25 F.3d 284, 286 (6th Cir. 1994).  The substantial evidence standard "presupposes that there is a zone of choice within which decision makers can go either way, without interference from the court."  *Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986) (*en banc*) (quotes and citations omitted).

In determining the existence of substantial evidence, courts must examine the record as a whole.  *Mullen*, 800 F.2d at 545 (citing *Kirk v. Sec'y of Health & Human Servs.*, 667 F.2d 524, 535 (6th Cir. 1981), *cert. denied*, 461 U.S. 957 (1983)).  However, courts are not to conduct a *de novo* review, resolve conflicts in evidence, or make credibility determinations.  *Id.* (citations

omitted); *see also Bradley v. Sec'y of Health & Human Servs.*, 862 F.2d 1224, 1228 (6th Cir. 1988).  Rather, if the ALJ's decision is supported by substantial evidence, it must be affirmed even if the reviewing court would decide the matter differently, and even if substantial evidence also supports the opposite conclusion.  *Her v. Comm'r of Soc. Sec.*, 203 F.3d 388, 389-90 (6th Cir. 1999); *see also Casey v. Sec'y of Health & Human Servs.*, 987 F.2d 1230, 1233 (6th Cir. 1993); *Mullen*, 800 F.2d at 545; *Kinsella v. Schweiker*, 708 F.2d 1058, 1059 (6th Cir. 1983).

Under the current rules, all medical opinions are weighed in light of several factors: supportability, consistency, relationship with the claimant, specialization, and any other relevant factors.  20 C.F.R. § 416.920c(c).  Supportability and consistency "are the most important factors" in weighing medical opinions.  *Id*. § 416.920c(b)(2).

Disability determinations often hinge on the claimant's credibility.  The ALJ must consider statements or reports from the claimant.  20 C.F.R. § 404.1529(a).  To determine whether statements of a claimant are credible, the following two-part test is used:

> First, the ALJ will ask whether there is an underlying medically determinable physical impairment that could reasonably be expected to produce the claimant's symptoms.  Second, if the ALJ finds that such an impairment exists, then he must evaluate the intensity, persistence, and limiting effects of the symptoms on the individual's ability to do basic work activities.

*Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 247 (6th Cir. 2007) (citing 20 C.F.R. § 416.929(a)).[2]  It is within the province of the ALJ, rather than the reviewing court, to evaluate

---

[2] In 20 C.F.R. § 404.1529, the Social Security Administration informs claimants that, in certain credibility determinations, the following factors should guide the analysis of the agency decision makers:

> (i) Your daily activities; (ii) The location, duration, frequency, and intensity of your pain or other symptoms; (iii) Precipitating and aggravating factors; (iv) The type, dosage, effectiveness, and side effects of any medication you take or have taken to alleviate your pain or other symptoms; (v) Treatment, other than medication, you receive or have received for relief of your pain or other symptoms; (vi) Any measures you use or have used to relieve your pain or other symptoms (e.g., lying flat on your back, standing for 15 to 20 minutes every hour, sleeping on a board, etc.); and (vii) Other factors concerning your functional limitations and restrictions due to pain or other symptoms.

the claimant's credibility.  *Rogers*, 486 F.3d at 247 (citing *Walters v. Comm'r of Soc. Sec.,* 127 F.3d 525, 531 (6th Cir. 1997); *Crum v. Sullivan*, 921 F.2d 644 (6th Cir. 1990); *Kirk v. Sec'y of Health & Human Servs.*, 667 F.2d 524, 538 (6th Cir. 1981)).  Even so, the credibility determinations of the ALJ must be reasonable and supported by substantial evidence.  *Rogers*, 486 F.3d at 249.  Gosser does not directly challenge any credibility findings.  D.E. 14.

Finally, issues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived.  *United States v. Kerns*, 9 F.4th 342, 351 (6th Cir. 2021); *Strickland v. City of Detroit*, 995 F.3d 495, 511 (6th Cir. 2021).  The Court here limits its analysis to the three issues clearly raised in Gosser's table of contents.  D.E. 14 at 2.

### III.  Listed Impairment

Gosser argues the ALJ erred in finding her migraines failed to meet or equal a listed impairment in step three.  D.E. 14 at 6-7.  Gosser asserts she "satisfies all the elements necessary to equal Listing 11.02B."  *Id.* at 9.  She says the ALJ's contrary finding is not supported by substantial evidence.  *Id.* at 8.

Headaches are not an Appendix 1 listed impairment that direct a finding of disability at step three.  But the Administration has issued SSR 19-4p, which instructs ALJs to compare primary headache disorders with paragraphs B and D of listing 11.02, which concerns epilepsy.  *Soc. Sec. Ruling, Ssr 19-4p; Titles II & Xvi: Evaluating Cases Involving Primary Headache Disorders*, SSR 19-4P, 2019 WL 4169635 (S.S.A. Aug. 26, 2019).  Paragraph B is at issue here.  Answer 8 in SSR 19-4p explains:

> Paragraph B of listing 11.02 requires dyscognitive seizures occurring at least once a week for at least 3 consecutive months despite adherence to prescribed treatment.  To evaluate whether a primary headache disorder is equal in severity and duration to the criteria in 11.02B, we consider: A detailed

---

20 C.F.R. § 404.1529(c)(3); *see also Felisky v. Bowen*, 35 F.3d 1027, 1037-38 (6th Cir. 1994).

> description from an AMS [Acceptable Medical Source] of a typical headache
> event, including all associated phenomena (for example, premonitory symptoms,
> aura, duration, intensity, and accompanying symptoms); the frequency of
> headache events; adherence to prescribed treatment; side effects of treatment (for
> example, many medications used for treating a primary headache disorder can
> produce drowsiness, confusion, or inattention); and limitations in functioning that
> may be associated with the primary headache disorder or effects of its treatment,
> such as interference with activity during the day (for example, the need for a
> darkened and quiet room, having to lie down without moving, a sleep disturbance
> that affects daytime activities, or other related needs and limitations).

Accordingly, Ruling 19-4p requires a detailed description of a claimant's typical migraine headache (including a description of limitations in functioning) from an acceptable medical source and that the disabling headache events occur at least once a week for at least three consecutive months. *Snyder v. Comm'r of Soc. Sec.*, No. 22-5948, 2023 WL 3673265, at *4 (6th Cir. May 26, 2023). If these factors exist, then the ALJ must consider whether the migraines debilitate the claimant similarly to disabling dyscognitive seizures. *See Jandt v. Saul*, No. 1:20-CV-00045-HBB, 2021 WL 467200, *8 (W.D. Ky. Feb. 9, 2021) (gathering cases). The mere existence of migraine headaches is insufficient to meet this standard. *Broderick v. Kijakazi*, No. 2:21-CV-12480, 2022 WL 19518407, *13 (E.D. Mich. July 12, 2022). To provide an example, having severe migraines accompanied by dizziness and fainting spells requires an ALJ to address whether those headaches are the medical equivalent of dyscognitive seizures. *Willis v. Comm'r of Soc. Sec. Admin.*, No. 2:19-CV-11689, 2020 WL 1934932, *3 (E.D. Mich. Apr. 22, 2020). Similarly, when a claimant has migraines that are so severe that they keep the claimant from driving, from standing for long periods of time, and from focusing the claimant's eyes, then the headaches may be the medical equivalent of Listing 11.02B dyscognitive seizures. *Fillinger v. Comm'r of Soc. Sec.*, No. 5:20-CV-01653, 2022 WL 952192, *4 (N.D. Ohio Mar. 30, 2022).

Stated differently, satisfying the above factors raises a substantial question as to whether the migraines are equivalent to Listing 11.02, and the ALJ must thus consider equivalency.

*Smith-Johnson v. Comm'r of Soc. Sec.*, 579 F. App'x 426, 432 (6th Cir. 2014). To establish a substantial question regarding whether the claimant meets a step three listing or its equivalent, "the claimant must point to specific evidence that demonstrates he reasonably could meet or equal every requirement of [the listing]." *Id*.

Here is what the ALJ said about Gosser's migraines in step three:

> The claimant's migraines do not equal listing 11.02 (the most closely analogous listed impairment for a headache disorder) because the medical record does not show equivalent signs and limitations to those detailed in listing 11.02 (paragraph B or D for dyscognitive seizures) consistent with the requirements of SSR 19-4p. Instead, the claimant takes medication prescribed under the care of her primary care provider to manage migraine headaches (Ex. 24F at 7-9), the medical record does not show any follow up under the care of a specialist for further evaluation or treatment of her migraine headaches within the relevant period, and the claimant recently reported to her primary care provider in December 2022 that her medication is helpful for her migraines, which had improved with medication adjustments (Ex. 24F at 3).

D.E. 12 at 22.

Gosser says the ALJ "failed to evaluate the frequency and severity" of her migraines. D.E. 14 at 8. She points out that the ALJ opinion does not specify how frequent and severe her migraines are. *Id*. at 8-9. Gosser summarizes her own testimony at the hearing, but that testimony does not establish how frequently she has migraine episodes. *Id*. at 9. To establish frequency (as required by Ruling 19-4p) Gosser points to two notations in the record. *Id*. at 10.

First, the notes from a December 1, 2021 consultive examination (by Amber Johnson APRN) state:

> Claimant complains of migraines, diagnosed at 18. States she will have **on average 2 migraines a month**. States her migraines prevent her from working because when she did work, she would miss for migraines. States she will have a left temporal pounding. Not worse with light or sound. Denies nausea or vomiting. States neither of her migraine medicines makes her migraines go away.

D.E. 12 at 559 (emphasis added).  As explained above, to trigger a Listing 11.02 analysis, there must be evidence that the disabling headaches occur at least once a week for at least three consecutive months.  Here, accepted at face value, this note fails to meet this standard.  "[O]n average two migraines a month" is less than "at least once a week," as required by SSR 19-4p, Question 8.  The note does include something of a description in that the migraines are described as a left temporal pounding (but without nausea).  D.E. 12 at 559.

Second, Gosser points to notes from a July 14, 2022 consultive examination by Teena Kissee, MSN, APRN, FNP-BC.  These notes record Gosser stating that she "has a history of migraines in the frequency of 1 a week for the duration of at least 2 days.  She reports Ibuprofen and Benadryl with a quiet dark place helps with the symptomatic management.  She denies any nausea, dizziness, or aura."  D.E. 12 at 664.  This "1 a week" could meet the frequency standard if one assumes that a period of at least three consecutive months is envisioned in the comment. *But see Broderick v. Kijakazi*, No. 2:21-CV-12480, 2022 WL 19518407, at *14 (E.D. Mich. July 12, 2022) ("The applicant's claim that for a time, she experienced headaches multiple times a week, without more, does not constitute a plausible argument that she medically equaled Listing 11.02."), *report and recommendation adopted*, 2023 WL 2711628 (E.D. Mich. Mar. 30, 2023).

But again, triggering the need for a Listing 11.02 analysis requires more than simply a sufficient frequency of migraine headaches.  There must also be, per SSR 19-4p, a "detailed description from an AMS [Acceptable Medical Source] of a typical headache event" that includes all associated phenomena, adherence to prescribed treatments, side effects, and limitations in functioning that may be associated with the primary headache disorder or effects of its treatment, such as interference with activity during the day.  The only details we have here are "left temporal pounding."  The migraines are said by these sources to be without "nausea,

dizziness, or aura." There is a notation about Gosser saying she misses work when she has migraines and being in "a quiet dark place" helps. Gosser described her migraine events at the hearing. D.E. 14 at 9 (summarizing the hearing transcript), but this is not information from an Acceptable Medical Source. Gosser's brief also includes information from the medical records about how her migraine medications have changed over time. *Id*. at 9-10. The Court here relies on Gosser's brief to elucidate the relevant portions of the record.

In the Court's view, the ALJ's analysis here does not run afoul of the substantial-evidence standard. Gosser's arguments resemble those typically seen in cases where the ALJ did not even consider whether the claimant's migraines were equivalent to Listing 11.02. Here, the ALJ did consider 11.02 equivalence and stated she did not consider the migraines sufficiently severe to equal the listing.

In other words, a reasonable factfinder could have determined Gosser failed to establish Listing-11.02B equivalency. Equivalence can be found, for example, when the symptoms include "aura, alteration of awareness, and intense headache with throbbing and severe pain" with "nausea and photophobia" with the need to "lie down in a dark and quiet room for relief" lasting up to 72 hours twice weekly. *Broderick v. Kijakazi*, No. 2:21-CV-12480, 2022 WL 19518407, at *14 (E.D. Mich. July 12, 2022) (quoting *Jandt v. Saul*, No. 1:20-CV-00045-HBB, 2021 WL 467200, at *6 (W.D. Ky. Feb. 9, 2021), *report and recommendation adopted*, 2023 WL 2711628 (E.D. Mich. Mar. 30, 2023). The record here does not indicate Gosser's migraines are that severe.

The facts in this case also fall significantly short of *Fillinger*, where the claimant complained of daily intractable migraines accompanied by weakness, pre-syncope, and dizziness. The frequency and severity of the migraines prevented her from driving most of the

time, kept her from standing for long periods, and kept her from focusing her eyes. *Fillinger v. Comm'r of Soc. Sec.*, No. 5:20-CV-01653, 2022 WL 952192, at \*4 (N.D. Ohio Mar. 30, 2022). That case was reversed because the ALJ erroneously believed there had to be seizures to equal listing 11.02. *Id*.

This case is also less extreme than *Rugg*, where the court reversed when the medical records indicated the claimant's migraine events were accompanied by "photophobia, muscle spasms, phono phobia, fatigue, blurred vision, flashing lights, insomnia, nausea, vertigo, vomiting, neck pain and stiffness, weakness, pain pounding on temples and frontal area, dizziness, right eye pain, pressure/head pain, memory loss, confusion, difficulty concentrating, heat intolerance, anxiety and unresponsiveness to oral medications." *Rugg v. Comm'r of Soc. Sec.*, No. 1:18-CV-937, 2020 WL 1527037, at \*5 (W.D. Mich. Mar. 31, 2020).

Gosser faults the ALJ for citing her lack of seeing a migraine specialist when "listing 11.02B does not require the care of a specialist." D.E. 14 at 10. In the Court's view, when the ALJ noted that Gosser had not seen a migraine specialist, the ALJ was pointing out the "dog that didn't bark," so to speak. In other words, if a person was experiencing the type of debilitating migraines that are equivalent to disabling dyscognitive seizures, one would expect to see some sort of referral to a specialist in the records.

Gosser also takes issue with the ALJ's statement that "the claimant recently reported to her primary care provider in December 2022 that her medication is helpful for her migraines, which had improved with medication adjustments (Ex. 24F at 3)." D.E. 14 at 10 (citing D.E. 12 at 22). Gosser points out that the doctor being cited by the ALJ said that Gosser "still has issues with migraines, [but] they might not be quite as intense as they were before she started taking metoprolol." D.E. 14 at 11 (citing D.E. 12 at 820). There is no contradiction here, as the ALJ

never suggested Gosser was migraine free.  Rather, the source is consistent with the ALJ's statement that medication had been helpful and the migraines had improved.

In conclusion, while a different factfinder could conceivably have reached a different conclusion, this ALJ's discussion of Listing 11.02 equivalency was supported by substantial evidence and not legally erroneous.

## IV.  Dr. Easton-Hogg

Edd Easton-Hogg, Psy.D., conducted a consultive examination of Gosser on September 2, 2021.  D.E. 12 at 554-57.  Dr. Easton-Hogg's opinions included that Gosser's "[c]apacity to respond appropriately to supervisors, coworkers and the public appears affected by [her mental health issues] to a moderate degree."  *Id*. at 557.  The ALJ adopted all of Dr. Easton-Hogg's opinions except for this aspect.  The ALJ explained:

> Dr. Easton-Hogg performed a thorough consultative examination of the claimant and supported his opinion with detailed notes, and the limitations he described are generally consistent with the record overall.  However, the moderate limitations in responding appropriately to supervisors and coworkers are inconsistent with the record overall and therefore unpersuasive.  The medical record does not show that the claimant visited the emergency room or was psychiatrically hospitalized for treatment of her mental health since the amended alleged onset date.  The claimant's mental health treatment was limited to only two appointments for medication management with her primary care provider in December 2020, and she reported that she was doing "reasonably well" on Paxil in January 2021 despite continued anxiety and depression (Ex. 4F at 8).  Though the claimant subsequently suffered the loss of her brother followed by her husband in May 2021 and experienced worsening in her anxiety and depression, she began outpatient treatment with therapy as well as medication management under the care of psychiatrist Dr. Umar, and the medical record does not support allegations of disabling mental symptoms and limitations for 12 consecutive months.  Instead, during her September 2021 consultative psychological examination, the claimant's clothing was neat, clean, and appropriate for the occasion, her grooming was normal, her attention to task and concentration appeared appropriate, she was alert and oriented to the year, month, day, and location, she exhibited no deficits in her memory, her eye contact was appropriate, her facial expressions were expressive, her attitude was cooperative, her speech flow was typical, her thought content appeared appropriate, her thought processes appeared logical, and her judgment and reality testing appeared

adequate (Ex. 8F at 2-3). The claimant also reported spending time with friends and family, going out to eat, going for walks, going to Walmart, cleaning, and mowing her lawn and a neighbor's lawn over the course of her treatment records in 2022 (Exs. 11F at 12, 20, 28, 14F at 5, 7, 9, 11, 17, 18F at 12, 29, 20F at 6, 8). In her most recent appointment with Dr. Umar, the claimant reported that she did not want to change her medications because they were improving her symptoms, she did not feel depression as often, and her panic attacks had improved (Ex. 22F at 2). Therefore, the undersigned accounts for the claimant's anxiety, depression, and panic disorder by finding that she can sustain attention and concentration to complete simple tasks with regular breaks every two hours during an eight-hour workday, she can interact occasionally with the public, and she can adapt to work to routine work conditions and occasional workplace changes that are gradually introduced.

D.E. 12 at 33-34.

Gosser here argues that the ALJ "failed to build an accurate and logical bridge between the evidence and her rejection of this portion of Dr. Easton-Hogg's opinion. Without sufficient explanation of the reasons for rejection of this portion of Dr. Easton-Hogg's opinion, there can be no meaningful review of the ALJ's decision." D.E. 14 at 20. She further argues that the RFC does not contain limitations on interacting with supervisors and coworkers, and this omission corrupted the VE's testimony. *Id*. at 21-22.

Here, the ALJ's RFC contains a finding that Gosser can interact only "occasionally" with the public. D.E. 12 at 24. Gosser argues there should also be limitations on her interactions with supervisors and coworkers and that this conclusion is supported by Dr. Easton-Hogg's finding that she was moderately impaired in interacting with supervisors and coworkers (*see id*. at 89, 95, 104). However, Dr. Easton-Hogg's more detailed findings do not support this moderate limitation. According to Dr. Easton-Hogg's own report, Gosser is "not significantly limited" in such things as:

- The ability to work in coordination with or in proximity to others without being distracted by them.

- The ability to ask simple questions or request assistance

- The ability to accept instructions and respond appropriately to criticism from supervisors

- The ability to get along with coworkers or peers without distracting them or exhibiting behavioral extremes

- The ability to maintain socially appropriate behavior

*Id*. at 98, 107.  And Dr. Easton-Hogg did specify that Gosser is moderately limited in her "ability to interact appropriately with the general public."  *Id.*

An obvious tension exists between Dr. Easton-Hogg's opinion that Gosser is moderately impaired in her ability to respond appropriately to supervisors and coworkers and the more detailed findings described above.  So, focusing on Easton-Hogg's report alone, the ALJ's decision to adopt moderate limitations in interacting with the public (but not supervisors and coworkers) is not unsupported by substantial evidence.  Nor does this determination (that the moderate limitation is inconsistent with the record as a whole) stem from a legal error.

## V.   Opinions of Umar, Colyer, and Oakes

Finally, Gosser takes issue with the ALJ finding unpersuasive certain medical opinions.  D.E. 14 at 12.  As stated by the ALJ, "The undersigned is generally unpersuaded by the medical opinions of Dr. Umar (Ex. 26F), Cynthia Colyer, L.C.S.W., the claimant's therapist (Ex. 27F), and Dr. Oakes (Ex. 28F)."  D.E. 12 at 34.  Gosser's interactions with all three of these providers are described extensively throughout the ALJ's opinion.  While discussing the RFC, the ALJ spends almost a page explaining why she rejects certain statements from the records cited above.  *Id*. at 34-35.

First, the ALJ correctly notes, "A statement as to whether a claimant can work goes to an issue reserved to the Commissioner and is inherently neither valuable nor persuasive . . . in

14

accordance with 20 CFR 404.1520b(c) and 416.920b(c)." D.E. 12 at 35. The ALJ properly discounted opinions that go to the ultimate issue of whether Gosser's impairments prevent her from maintaining employment.

Second, the ALJ explained, "Regarding the functional limitations the[se providers] described, though they supported their conclusions with explanations noting the claimant's symptoms, the extent of the limitations Dr. Umar, Dr. Oakes, and therapist Colyer described are inconsistent with the record overall and therefore unpersuasive." D.E. 12 at 35. The ALJ noted there are no records of psychiatric hospitalization during the relevant period. Further, when Gosser visited Dr. Easton-Hogg for the September 2021 consultive examination, she behaved normally. *Id.* Additionally, Gosser

> also reported spending time with friends and family, going out to eat, going for walks, going to Walmart, cleaning, and mowing her lawn and a neighbor's lawn over the course of her treatment records in 2022 (Exs. 11F at 12, 20, 28, 14F at 5, 7, 9, 11, 17, 18F at 12, 29, 20F at 6, 8). In addition, in her most recent appointment with Dr. Umar, the claimant reported that she did not want to change her medications because they were improving her symptoms, she did not feel depression as often, and her panic attacks had improved (Ex. 22F at 2).

*Id.* The ALJ here provided reasons why she deemed unpersuasive these opinions on Gosser's psychiatric limitations.

Gosser argues the ALJ cherry-picked certain positive facts from the record, while ignoring more negative facts, to achieve a desired result. D.E. 14 at 16-18. But this is not a case where the ALJ's opinion mentions only the positive but ignores the negative. The ALJ's lengthy, detailed opinion, is replete with references to facts that weigh both in favor of, and against, a finding of disability. Gosser's brief does an admirable job pointing to evidence of her anxiety and depression in the record. *Id.* at 15-18. But this evidence does not *necessarily* render improper the ALJ's finding that Gosser is improving and capable of working under certain

limitations.  The ALJ did include psychiatric-based limitations in Gosser's medium-work RFC, including regular breaks, limitations in interacting with the public, and a requirement that workplace changes be limited and gradually introduced.  *Id*. at 24.  Further, this is not a case where significant items in the record were completely ignored.  Although another ALJ could have weighed these three medical opinions differently, this ALJ supported her decision with specific reasons and citations to the record.  The decision to discount aspects of these opinions was within the zone of reasonable choice and is thus not unsupported by substantial evidence or legally erroneous.

## VI.  CONCLUSION

The Court being sufficiently advised, **IT IS HEREBY ORDERED** as follows:

(1)      Plaintiff's request to remand (D.E. 14) is **DENIED**.

(2)      **JUDGMENT** will be entered in favor of the Commissioner by separate contemporaneous order.

This the 5th day of December, 2024.

Signed By:

*Hanly A. Ingram*

**United States Magistrate Judge**